USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/11/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PROTEX INDUSTRIAL (H.K.) LTD.,

               Plaintiffs,

-against-

VINCE HOLDING CORP., VINCE LLC,
REBECCA TAYLOR INC., and REBECCA
TAYLOR RETAIL STORES LLC,

               Defendants.

1:23-cv-1793 (MKV)

**OPINION AND ORDER
GRANTING IN PART AND
DENYING IN PART
MOTION TO DISMISS
CLAIMS AGAINST THE
VINCE DEFENDANTS**

---

MARY KAY VYSKOCIL, United States District Judge:

      Plaintiff Protex Industrial (H.K.) Ltd. ("Plaintiff") brings this diversity action against Vince Holding Corp., Vince LLC (together, the "Vince Defendants"), Rebecca Taylor Inc., and Rebecca Taylor Retail Stores LLC (together, "Rebecca Taylor") (and collectively, "Defendants"), alleging various state law claims against them, including breach of contract, fraud by material omission, negligent misrepresentation, quantum meruit, and unjust enrichment. The Vince Defendants now move to dismiss all claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the motion to dismiss is GRANTED in part and DENIED in part.

# BACKGROUND[1]

### *Underlying Factual Background*

The New York-based Rebecca Taylor Defendants have been a customer of Plaintiff, a Hong King-based garment manufacturer, for the last nine years. TAC ¶¶ 1, 14, 15. Over the course of their nine-year business affiliation, Plaintiff and the Rebecca Taylor Defendants developed a "valued and trusted relationship." TAC ¶ 17.

In November 2019, Vince Holding Corp. ("Vince Holding"), a global contemporary group led primarily by the Vince clothing brand, acquired Defendant Rebecca Taylor Inc. TAC ¶¶ 10, 16. The Complaint provides detailed allegations in an attempt to explain the ownership structure of the Vince Defendants and the Rebecca Taylor Defendants. TAC ¶¶ 7–13. To summarize, Defendant Vince LLC is a Delaware limited liability company whose sole member is Vince Intermediate Holding, LLC (another Delaware limited liability company), whose sole member, in turn, is Defendant Vince Holding (together, the "Vince Defendants"). TAC ¶ 8. Defendant Rebecca Taylor Inc. is a New York corporation and the sole member of Defendant Rebecca Taylor Retail Stores LLC (the "Rebecca Taylor Defendants"). TAC ¶¶ 9, 10.

Plaintiff alleges that after Vince Holding acquired Rebecca Taylor Inc., the Rebecca Taylor Defendants—by virtue of the sole membership of Rebecca Taylor Inc. in Rebecca Taylor Retail

---

[1] The facts are taken from the operative Third Amended Complaint [ECF No. 81] ("TAC" or the "Complaint"), and for purposes of this motion, are accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On January 4, 2024, the Court granted Plaintiff leave to file its ***fourth*** complaint in this action after Plaintiff requested leave to include additional facts discovered since the filing of Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") [ECF Nos. 63, 78]. The Court expressly ordered that Plaintiff could file a TAC only "to include additional facts ***discovered since the filing of***' Defendants' Motion to Dismiss the SAC. [ECF No. 80] (emphasis added). Notwithstanding the Court's explicit directive, Plaintiff filed its Third Amended Complaint to include allegations and references to emails and/or documents that Plaintiff has had in its possession since as early as 2020. *See, e.g.*, TAC ¶¶ 24, 26, 28, 38. To consider these allegations, which were added in direct violation of this Court's order, would prejudice the Vince Defendants who have now had to move to dismiss Plaintiff's complaints three separate times. Accordingly, the Court does not consider on this motion any newly added allegations that were known or could have been known to Plaintiff prior to the filing of Defendants' Motion to Dismiss the SAC. The Court's background discussion reflects only those allegations which the Court considers on the current Motion.

Stores LLC—both became wholly owned subsidiaries of Defendant Vince Holding.  TAC ¶ 11. Additionally, Plaintiff asserts that according to Vince Holding's 10-K filings, Rebecca Taylor Inc. is exclusively controlled by *both* Vince Defendants.  TAC ¶ 9.  Plaintiff alleges that based upon the Vince Defendants' sole control of Rebecca Taylor Inc., Rebecca Taylor Retail Stores LLC is similarly exclusively controlled by the Vince Defendants.  TAC ¶ 10.

Plaintiff alleges that after the Vince Defendants acquired exclusive control of the Rebecca Taylor Defendants, the Rebecca Taylor Defendants were treated not as separate entities, but as part of the Vince company brand and global contemporary group.  TAC ¶ 10.  For example, Plaintiff alleges that the Rebecca Taylor Defendants are controlled and managed by the Vince Defendants, and monies and assets of the Rebecca Taylor Defendants have been commingled and intermingled with the Vince Defendants' funds and obligations.  TAC ¶ 13.  Plaintiff further alleges that the Vince Defendants have sold certain assets of the Rebecca Taylor Defendants, and then used those assets and funds to pay obligations of the Vince Defendants.  The Vince Defendants also allegedly have caused the Rebecca Taylor Defendants to guarantee loans to the Vince Defendants.  TAC ¶ 13.

Plaintiff alleges that after the Vince Defendants' acquisition of the Rebecca Taylor Defendants in 2019, the Vince Defendants continued utilizing Plaintiff from 2019 through 2022 for the manufacture of garments for the Rebecca Taylor Defendants.  TAC ¶ 16.  Plaintiff alleges that "[b]ased upon the valued and trusted relationship between [Plaintiff] and [the Rebecca Taylor Defendants]," Plaintiff extended the "same courtesies and trust" to the Vince Defendants.  TAC ¶ 18.  In July 2020, purportedly at the request of the Vince Defendants, Plaintiff signed a set of "Terms and Conditions" for the continued manufacture of products for both the Vince Defendants and the Rebecca Taylor Defendants.  TAC, Exhibit 1 ("Terms and Conditions").  The Terms and Conditions, in relevant part, state the following:

> **VINCE PURCHASE ORDER TERMS AND CONDITIONS.**  The following terms and conditions ***govern purchase orders issued by Vince***.  Hard copy versions and translations are available upon written request . . . This Purchase Order constitutes an offer by VINCE, (hereinafter referred to as BUYER) for acceptance by SELLER upon the terms and conditions, and subject to instructions and specifications shown or referred to, which are the complete agreement between BUYER and SELLER.

Terms and Conditions at 5 (emphasis added).

Plaintiff alleges that around the same time that it signed the Terms and Conditions, it also completed a Supplier (Payee) Vendor Set-up / Change Form proffered by, and "at the request of" the Vince Defendants.  TAC ¶ 21; *see also* TAC, Exhibit 2 ("Vendor Form").  The Vendor Form contains the letterheads of both "Vince" and "Rebecca Taylor."  *See* Vendor Form.  In relevant part, the Vendor Form states:

> Vince standard payment terms for vendors is net 30 days.  CFO approval is required for any terms less than 30 days . . . By submitting this vendor setup form, you certify that the supporting contract has been submitted and approved by the Vince legal department.

Vendor Form at 3.  Plaintiff alleges that, at some point, the Vince Defendants and the Rebecca Taylor Defendants merged their invoice system into a single account, requiring the submission of both Rebecca Taylor Invoices and Vince Invoices to a single email address with a "Vince" domain.  TAC ¶ 21.[2]

Plaintiff alleges that, thereafter, during the period of May 2022 through September 2022, the Vince Defendants and Rebecca Taylor Defendants entered into multiple separate purchase order agreements with Plaintiff for the manufacture and sale of garments, totaling $1,706,042.90. TAC ¶ 57.  Plaintiff attaches to its TAC copies of each of the fifty-two purchase orders at issue, totaling $1,706,042.90.  *See* TAC ¶ 31; TAC, Exhibit 3 (the "Purchase Orders").  Plaintiff states

---

[2] The TAC states that this occurred "[o]n or about October 10, 202 [sic]," and therefore, it is unclear to the Court in what year the Defendants merged their invoice systems.  *See* TAC ¶ 21.

that these purchase orders included an obligation to make payment within thirty (30) days of the Invoice date. TAC ¶ 57. Notably, all fifty-two purchase orders exclusively bear the letterhead "Rebecca Taylor," and none are signed by any party—neither Plaintiff nor Defendants. *See* Purchase Orders. Plaintiff alleges that it delivered the garments to the Vince Defendants and Rebecca Taylor Defendants in conformity with the terms of the purchase orders and issued debt notices, totaling $1,706,042.90. TAC ¶ 32. At no point did either the Vince Defendants or the Rebecca Taylor Defendants notify Plaintiff of any non-conformity or otherwise seek to reject the delivery of the garments. TAC ¶ 34. Notably, nowhere in their motion papers do the Vince Defendants dispute that these goods were delivered to either them or to the Rebecca Taylor Defendants.

Notwithstanding the apparent continued business relationship, Plaintiff alleges "upon information and belief" that the Vince Defendants were considering discontinuing operation of the Rebecca Taylor Defendants during the same period when Plaintiff was fulfilling these Purchase Orders. TAC ¶ 35. As alleged by Plaintiff, all Defendants were aware that the Rebecca Taylor Defendants were facing financial difficulties representing an approximately 28% sales decrease and would be "wound down." TAC ¶ 40. And indeed, on September 12, 2022, the Vince Defendants notified shareholders of their intention to discontinue operation of the Rebecca Taylor Defendants. TAC ¶ 36. Plaintiff alleges that despite the decision to discontinue operation of the Rebecca Taylor Defendants well before September 12, 2022, representatives from the Vince Defendants continued having discussions with Plaintiff's representatives regarding new designs and new manufacturing requirements for Defendants' 2022 Holiday Season line and Spring 2023 line and continued placing orders for garments. TAC ¶ 37. To that end, Plaintiff asserts that Defendants falsely represented and held itself out to Plaintiff as conducting "business as usual" despite the non-public firm decision to close Rebecca Taylor. TAC ¶ 37.

Two days after its announcement to shareholders, the Vince Defendants notified Plaintiff via an emailed letter of its intention to "exit" the Rebecca Taylor business. *See* TAC ¶ 39; *see also* TAC, Exhibit 4 (the "Exit Notification"). As of the date of the Exit Notification, Plaintiff alleges that Defendants still owed Plaintiff a total of $1,706,042.90 which by that date was more than thirty (30) days in arrears. TAC ¶ 43. Following the Exit Notification, the Vince Defendants sold the intellectual property and certain related ancillary assets of the Rebecca Taylor Defendants for the approximate sum of $4.3 million, realizing a gain of $1.6 million. TAC ¶ 43. Plaintiff alleges that rather than pay the debts of the Rebecca Taylor Defendants, the Vince Defendants retained the $4.3 million proceeds. TAC ¶ 44. Additionally, Plaintiff alleges that the Vince Defendants compelled the Rebecca Taylor Defendants to enter into certain assignments for the benefit of creditors to deliberately render the Rebecca Taylor Defendants financially unable to respond to a money judgement. TAC ¶ 13.

Ultimately, Plaintiff states that despite making multiple demands to Defendants, and despite a November 2022 formal written demand for payment, Defendants have failed to make payment for the $1,706,042.90 owed for the garments delivered by Plaintiff. TAC ¶ 48.

### Procedural Background

Plaintiff commenced this action in March 2023 against Defendants, shortly thereafter filing a First Amended Complaint ("FAC"). [ECF Nos. 1, 35]. Defendants filed a joint motion to dismiss the FAC. [ECF No. 36]. In August 2023, the Court *sua sponte* entered an Order to Show Cause directing Plaintiff to demonstrate why the action should not be dismissed for lack of subject matter jurisdiction, due to deficient pleading of diversity jurisdiction. [ECF Nos. 55, 56]. In response, and with leave of the Court, Plaintiff filed a Second Amended Complaint ("SAC") which properly plead diversity jurisdiction. [ECF No. 60]. Defendants again moved to dismiss the SAC. [ECF No. 63].

Around this time, Kibler Fowler & Cave LLP, attorney of record for *all* Defendants at the time, moved to withdraw as attorney for the Rebecca Taylor Defendants *only*. [ECF No. 47]. The motion stated that the Firm was "discharged" from representing the Rebecca Taylor Defendants and "[was] no longer authorized to represent" them in this action because they no longer "ha[d] assets from which to compensate legal counsel." [ECF No. 48]. Kibler Fowler advised the Court that it would remain counsel for the Vince Defendants. [ECF No. 47]. Plaintiff adamantly opposed the motion to withdraw, arguing that the motion to withdraw was being made at the instruction of the Vince Defendants, despite the Vince Defendants retaining ownership and dominion over the Rebecca Taylor Defendants. [ECF No. 53]. Specifically, Plaintiff argued that the Vince Defendants had effectively sold off all substantive assets of the Rebecca Taylor Defendants and pocketed the proceeds from those sales, only to leave empty shell companies, which no longer would be represented in this case. [ECF No. 53].

On November 1, 2023, the Court held a conference on the motion to withdraw as counsel for the Rebecca Taylor Defendants. [ECF No. 73]. At the conference, the Court noted that in light of the Rebecca Taylor Defendants' discharge of Kibler Fowler, the Court likely had no choice but to grant the motion. *See e.g.*, D.R. § 2-110(B)(4) (Under the Code of Professional Responsibility, withdrawal is mandatory (with the permission of the Court) when a "lawyer is discharged by his or her client."); *see also* 22 N.Y.C.R.R. 1200.15(B)(4); *see also Casper v. Lew Lieberbaum & Co.*, No. 97-cv-3016, 1999 WL 335334, at *4 (S.D.N.Y. 1999) ("[B]ecause Movants were discharged by plaintiffs, they were required to withdraw as counsel."). However, the Court also raised concern with respect to the motion to withdraw based on the Rebecca Taylor Defendants' lack of assets or funds. [ECF No. 73]. Specifically, the Court questioned whether counsel was being compensated by the Vince Defendants with respect to representation of *all* Defendants prior to Rebecca Taylor Defendants' assignment. [ECF No. 73]. The Court stated that not only was it unclear from the

record, and from the conference, how Kibler Fowler had been compensated for its work related to the Rebecca Taylor Defendants, but in fact Kibler Fowler's representations at the conference suggested that compensation for the Rebecca Taylor Defendants came directly from the Vince Defendants. [ECF No. 73]. The Court ordered that Defendants provide additional information in connection with the Kibler Fowler motion to withdraw. [ECF No. 73].

After Kibler Fowler submitted additional affidavits in support of its motion to withdraw as counsel for the Rebecca Taylor Defendants, the Court granted the motion. [ECF No. 77]. In its Order granting the motion, the Court noted that the declarations submitted by the Chief Operating Officer and Independent Director of the Rebecca Taylor Defendants made clear that the Rebecca Taylor Defendants had "discharged" Kibler Fowler as counsel, had instructed Kibler Fowler "not to file a motion to dismiss or any other responsive pleadings on behalf of [the Rebecca Taylor Defendants]," and "[would] not continue to defend themselves in this litigation." [ECF Nos. 62-1, 74-2]. Moreover, the declarations made clear that the Rebecca Taylor Defendants understood that, as Corporate Defendants, they could not appear *pro se* in the action [ECF No. 74-2 at ¶ 5], and unless and until they "retain[ed] new counsel, [they] [would] be in default and Plaintiff [could] seek and may obtain default judgment against them," [ECF No. 74-2 at ¶ 8]. As a result, the Court held that "[w]here the Corporate Defendants no longer wish to participate in a suit, 'the Court cannot compel Defendant[s] to continue participating in [the] suit. And, Defendants' lawyers cannot take further action in this case where their client refuses to participate in the action, has discharged them as his attorneys, and has instructed them to take no further action in this proceeding.' " [ECF No. 77] (citing *Honeydew Investing LLC v. Abadi*, 2022 WL 16857354, at

*3 (S.D.N.Y. 2022)).  The Rebecca Taylor Defendants have not retained new counsel, have not filed a pleading responsive to the operative Complaint, and remain in default to date.[3]

Subsequently, Plaintiff requested leave to file a TAC to include "additional critical facts" it had discovered since the filing of Defendants' Motion to Dismiss the SAC, specifically in connection with Defendants' admission that the Vince Defendants were the entities that billed and paid for the Rebecca Taylor Defendants' legal fees in this litigation.  [ECF No. 78].  Plaintiff also requested leave to include additional causes of action.  [ECF No. 78].  Defendant opposed Plaintiff's request in its entirety.  [ECF No. 79].  The Court expressly ordered that Plaintiff could file a TAC only "to include additional facts *discovered since the filing of*" Defendants' Motion to Dismiss the SAC.  [ECF No. 80] (emphasis added).  The Court denied Plaintiff's request for leave to amend its complaint to include additional Causes of Action, noting that "[t]o the extent that Plaintiff believe[d] it has additional causes of action, Plaintiff may be able to file a separate action."  [ECF No. 80].

Plaintiff's fourth complaint in this action, the TAC, asserts five causes of action against all Defendants: (1) breach of contract, (2) fraud by material omission, (3) negligent misrepresentation, (4) quantum meruit, and (5) unjust enrichment.  TAC ¶¶ 50–107.  The Vince Defendants now move, for the third time, to dismiss all claims against them under Rule 12(b)(6).  *See* Motion to Dismiss Third Amended Complaint [ECF No. 82]; Memorandum of Law [ECF No. 83] ("Def. Mem."); Declaration of Counsel Daniel J. Stujenske [ECF No. 84] ("Stujenske Decl.").  Plaintiff opposes the motion.  *See* Memorandum of Law in Opposition to Motion to Dismiss [ECF

---

[3] After granting Plaintiff leave to file a TAC, as discussed below, the Court ordered that "any contemplated motions for default judgment against [the Rebecca Taylor Defendants] shall be held in abeyance until the anticipated Third Amended Complaint is served upon All Defendants."  [ECF No. 80].  Affidavits of service of summons and the TAC on the Rebecca Taylor Defendants were filed on the docket on May 6, 2024.  [ECF No. 89].  According to those summons, the Rebecca Taylor Defendants' responses to the TAC were due February 8, 2024.  [ECF No. 89].  However, Plaintiff has not filed a motion for default judgment or otherwise prosecuted this case against the Rebecca Taylor Defendants to date.

No. 86] ("Pl. Opp."). Defendant has filed a Reply. *See* Reply Memorandum of Law [ECF No. 88] ("Def. Reply").

## **LEGAL STANDARD**

### *Failure to State a Claim Under Rule 12(b)(6)*

To survive a Rule 12(b)(6) motion to dismiss, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the Court "must accept as true all of the allegations contained in a complaint," this "tenet . . . is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### *Heightened Pleading Standard Under Rule 9(b)*

Beyond the requirements of Rule 12(b)(6), a complaint alleging fraud, which Plaintiff does here, must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) with respect to the particular fraud claim. *See, e.g.*, *ECA, Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319–20 (2007)). Rule 9(b) demands that "the pleading specify (1) the fraudulent statements, (2) the speaker, (3) where and when the statements were made, and (4) why the statements were fraudulent." *United States ex rel. Chorches for Bankr. Est. of Fabula v. American Medical Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017). Put another way, Rule 9(b) "requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *See U.S. ex rel. Kester v. Novartis Pharm. Corp.*, 23 F. Supp. 3d 242, 252 (S.D.N.Y. 2014).

***Motion to Strike Under Rule 12(f)***

"The court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). In general, "motions to strike are disfavored." *Ambac Assur. Corp. v. EMC Mortg. Corp.*, No. 08 Civ. 9464 (RMB) (MHD), 2009 WL 734073, at *1 (S.D.N.Y. Mar. 16, 2009) (quoting *Roe v. City of N.Y.*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)). "Where a demand for damages is not recoverable as a matter of law, however, it may be stricken." *Phila. Stock Exch. v. Int'l Sec. Exch., Inc.*, No. 05 Civ. 5390, 2005 WL 2923519, at *1 (S.D.N.Y. Nov. 2, 2005). The Court will "deem the non-moving party's well-pleaded facts to be admitted, draw all reasonable inferences in the pleader's favor, and resolve all doubts in favor of denying the motion to strike." *Diesel Props S.r.L. v. Greystone Bus. Credit II LLC*, No. 07 Civ. 9580, 2008 WL 4833001, at *4 (S.D.N.Y. Nov. 5, 2008); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

## DISCUSSION

### I.    Documents Properly Considered on a Motion to Dismiss.

As a threshold matter, there is dispute among the parties as to which documents properly may be considered at this stage. In considering a motion to dismiss pursuant to Rule 12(b)(6), it is well established that a pleading is deemed to include any "written instrument" that is attached to it as "an exhibit," Fed. R. Civ. P. 10(c), or is incorporated in it by reference, *see, e.g.*, *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *see also Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020). "And even if the 'plaintiff chooses not to attach' an instrument 'to the complaint or [to] incorporate [it] by reference,' if it is one 'upon which' the plaintiff 'solely relies and which is integral to the complaint,' the court may take the document into consideration in deciding the defendant's motion to dismiss." *Lynch*, 952 F.3d at 79 (quoting *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995)).

As previously noted, Plaintiff attached several documents as exhibits to the TAC: (1) Terms and Conditions that Plaintiff allegedly signed at the request of the Vince Defendants for the continued manufacture of products for both the Vince Defendants and Rebecca Taylor Defendants; (2) a Supplier (Payee) Vendor Set-up / Change Form (Vendor Form) that Plaintiff signed, allegedly proffered by, and "at the request of," the Vince Defendants; and (3) copies of fifty-two, unsigned purchase orders, for which Plaintiff seeks damages, and which bear the "Rebecca Taylor" letterhead. Thus, the Court may properly consider these "written instruments" in connection with ruling on this motion. Fed. R. Civ. P. 10(c); *Lynch*, 952 F.3d at 79.

The Vince Defendants, however, have submitted with their motion to dismiss, a Declaration of Counsel Daniel J. Stujenske ("Stujenske Decl."), attaching what they refer to as "a true and correct copy of" the Terms and Conditions. *See* Stujenske Decl., Exhibit C ("the Rider"). The Vince Defendants argue that Plaintiff attached to the TAC only an "incomplete version" of the Terms and Conditions, which "omits a rider in which [Plaintiff] expressly acknowledged that the 'Terms and Conditions' are 'applicable' only to the 'Rebecca Taylor' subsidiary." Def. Mem. at 6. Citing *International Audiotext Network, Inc. v. AT&T*, 62 F.3d 69, 72 (2d Cir. 1995), the Vince Defendants argue that the Court may properly consider their Exhibit, including the Rider, on this motion to dismiss because Plaintiff may not "cherry-pick[] portions of a document and have the Court disregard the rest." Def. Mem. at 4 n.1.

But cases in which the Second Circuit has upheld the consideration of written instruments not attached to the complaint have overwhelmingly done so only in instances where the instrument to be considered is *undisputed*. *Dixon v. von Blanckensee*, 994 F.3d 95, 102 (2d Cir. 2021) (holding a plaintiff cannot allege a fact about a publicly available "*court proceeding*" and escape scrutiny of "the record of that proceeding" simply by neglecting to attach the undisputed court record); *id*. (noting that a party "to a written contract" may not "make assertions about the terms

of the contract and preclude a court from considering on a motion to dismiss the *undisputed document* that embodies those terms").

Here, of course, there *is* dispute between the parties as to whether the "Rider" submitted by the Vince Defendants is part of the Terms and Conditions. Nor is the Rider a publicly available and uncontroverted court record of which the Court could take judicial notice. *See, e.g.*, *Dixon*, 994 F.3d at 102. For example, Plaintiff argues that the Rider proffered by the Vince Defendants is "not referenced nor relied upon in the Complaint"; "it is not apparent from the Rider itself that it is part of the Terms and Conditions attached to the Complaint"; the "Rider is not referenced in the Terms and Conditions"; the "Rider contains no page number consecutive to the Terms and Conditions"; "nor does the Rider contain a date equal to the date of the Terms and Conditions." Pl. Opp. at 3. Accordingly, accepting as true all of the allegations contained in the TAC and construing those allegations in the light most favorable to Plaintiff—as the Court must at this stage—the Court does not consider the "Rider" proffered by the Vince Defendants on this motion.

## II.       Breach of Contract (Claim One)

The parties agree that New York's Uniform Commercial Code governs Plaintiff's breach of contract claim, which seeks damages in connection with the sale of goods—namely, manufactured garments. *See* N.Y. U.C.C. §2-102 ("Unless the context otherwise requires, this Article applies to transactions in goods."); *see also* Pl. Opp. at 7; Def. Memo at 2. In order to recover on a contract for the sale of goods, an aggrieved seller must allege that: (1) it had a contract; (2) the buyer failed to pay the purchase price; (3) the goods sued on are identifiable to the contract and (4) it was unable to resell the goods after reasonable effort. *See Hyosung Am., Inc. v. Sumagh Textile Co.*, 137 F.3d 75, 79 (2d Cir. 1998) (citing N.Y. U.C.C. §§ 2–201, 2–709 (McKinney 1993)). In their motion to dismiss, the Vince Defendants argue that Plaintiff has failed to allege the existence of an enforceable contract in the first instance, and in the alternative, even if the

Purchase Orders do constitute an enforceable agreement for the sale of goods with the Rebecca Taylor Defendants, Plaintiff has failed to allege that the Vince Defendants are liable as buyers.

A.  The Documents Comprising the Contract at Issue.

As an initial matter, Plaintiff alleges that the contract at issue between the parties is comprised of three sets of documents: the Terms and Conditions, the Vendor Form, and the Purchase Orders.  *See* TAC at ¶¶ 19, 20, 21, 22; Pl. Opp. at 6.  Despite the Vince Defendants' argument that neither the Terms and Conditions nor the Vendor Form are enforceable contracts for the sale of goods under the N.Y. U.C.C., Plaintiff insists that "[b]ased upon [its] allegations that the contract between the parties is comprised of multiple documents, the Court must accept as true that the contract in dispute is comprised of the foregoing documents and that a contract has been alleged between Plaintiff and Defendants."  Pl. Opp. at 7.  The Vince Defendants counter that such a contention is a "legal" conclusion, which the Court may disregard at the motion to dismiss stage.  Def. Mem. at 3.

It is indeed true that, as Plaintiff argues, under New York contract law, multiple documents must be read together as a single contract when the "plain language of the agreements unambiguously requires them to be read together."  *Madeleine, L.L .C. v. Casden*, 950 F. Supp. 2d 685, 696 (S.D.N.Y. 2013).  Still, multiple agreements *may* be interpreted as one contract if they "form part of a single transaction and are designed to effectuate the same purpose."  *Genger v. Genger*, No. 14 Civ. 05683, 2015 WL 64743 at *5 (S.D.N.Y. Jan. 5, 2015) (citing *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 143 (2d Cir. 1998)); *see also Atlas Partners, LLC v. STMicroelectronics, Int'l N.V.*, No. 14-CV-7134 (VM), 2015 WL 4940126, at *4 (S.D.N.Y. Aug. 10, 2015).  Because a determination of "[w]hether multiple writings should be construed as one agreement depends upon the intent of the parties, . . . [the] issue . . . is typically a question of fact for the jury" and not appropriately determined at the motion to dismiss stage.  *TVT Records v. Island Def Jam Music*

*Grp.*, 412 F.3d 82, 89 (2d Cir. 2005).  However, if the "documents in question reflect no ambiguity as to whether they should be read as a single contract, the question is a matter of law for the Court," which may properly be determined at the motion to dismiss stage.  *Id.*

Plaintiff's position that the three aforementioned documents constitute *one* contract is directly contradicted by the clear, unambiguous language of the documents *it* has attached to the TAC.  Here, Plaintiff seeks damages for the $1,706,042.90 owed for the garments it delivered by fulfilling fifty-two "*separate purchase order agreements.*"  TAC ¶ 48 (emphasis added); *see also* TAC ¶¶ 32, 57; Purchase Orders.  Moreover, the Terms and Conditions expressly state that once purchase orders are issued, those purchase orders will "constitute[] the *entire* agreement between SELLER and BUYER with respect to the subject matter and is *the exclusive statement of the terms of such agreement*, which supersedes any other oral or written arrangements, representations or communications between SELLER and BUYER."  Terms and Conditions at 5 (emphasis added).  Notably, in arguing a *separate* issue with respect to its breach of contract claim (whether the writing requirement in the U.C.C. is satisfied here) Plaintiff quotes language conceding that purchase orders "constitutes an offer by VINCE . . . for acceptance by SELLER . . . which are *the complete agreement* between BUYER and SELLER."  *See* Pl. Opp. at 8 (citing Terms and Conditions at 6).  As Plaintiff's inadvertent concession makes clear, such language reflects "no ambiguity" that the Terms and Conditions should *not* be read together with the separate Purchase Orders as a single contract "as a matter of law."  *TVT Records*, 412 F.3d at 89.

Similarly based upon this language in the Terms and Conditions—which unequivocally expresses that Purchase Orders issued by Vince: "constitute[] the *entire* agreement" between buyer and seller; "are the complete agreement between buyer and seller;" represent "the exclusive statement of the terms of such agreement;" and "supersede[] any other oral or written arrangements, representations or communications between" buyer and seller—the Court concludes

that the Vendor Form should *not* be read together with the separate Purchase Orders as a single contract "as a matter of law." *TVT Records*, 412 F.3d at 89.  The Court notes that the Vendor Form itself contains no payment obligation that could have been breached by non-payment.  Instead, the Form appears to be an incomplete and unsigned "Set-up / Change Form"—not a contract—which simply includes basic information about the supplier, such as contact information and wire payment details.  *See* Vendor Form.  Significantly, the Vendor Form explicitly contemplates the separate execution of *contracts*.  *See* Vendor Form at 2 ("By submitting this vendor setup form, you certify that the *supporting contract* has been submitted and approved by the Vince legal department.") (emphasis added).

As such, the Court finds—as a matter of law—that the three separate documents should not be read as a *single* contract.  *TVT Records*, 412 F.3d at 89.  Because Plaintiff expressly seeks damages from an alleged breach of "multiple separate purchase order agreements," the Court turns to the Purchase Orders.

      B.   <u>Plaintiff Sufficiently Alleges the Purchase<br>           Orders Are Enforceable Contracts.</u>

The Vince Defendants concede that the Purchase Orders on their own may create a binding contract.  Def. Mem. at 9; *Gallo Wine Distributors, L.L.C. v. Niebaum-Coppola Est. Winery, L.P.*, 56 F. App'x 8, 10 (2d Cir. 2003) (holding that accepted purchase orders—and not the underlying distributorship agreement—are the contracts for sale); *Kay-Bee Toys Corp. v. Winston Sports Corp.*, 214 A.D.2d 457, 625 N.Y.S.2d 208 (1995) ("[I]t is recognized in New York that purchase orders may create a binding contract." (citations omitted)); *see also CareandWear II, Inc. v. Nexcha L.L.C.*, 581 F. Supp. 3d 553, 557 (S.D.N.Y. 2022); *Anhui Konka Green Lighting Co., Ltd. v. Green Logic LED Elec. Supply, Inc.*, 625 F. Supp. 3d 269, 280 (S.D.N.Y. 2022).  In order for a

purchase order to constitute a binding contract for the sale of goods, it must set forth the "material terms" of the agreement.  *Reyes v. Lincoln Auto. Fin. Servs.*, 861 F.3d 51, 58 (2d Cir. 2017).

Relevant here, the N.Y. U.C.C. Statute of Frauds provides that "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties *and signed by the party against whom enforcement is sought* or by his authorized agent or broker."  N.Y. U.C.C. § 2-201(1) (emphasis added).  The Vince Defendants first argue that the Purchase Orders are barred by the Statute of Frauds because they are all unsigned by any Defendants.  The Court disagrees.  Each Purchase Order unmistakably bears the "Rebecca Taylor" letterhead, *see* Purchase Orders, and courts have repeatedly held that a letterhead may satisfy the New York Statute of Frauds signatory requirement.  *See, e.g.*, *PH Int'l Trading Corp. v. Nordstrom, Inc.*, 555 F. App'x 9, 11 (2d Cir. 2013) ("Under the New York U.C.C., the term 'Signed' includes 'any symbol executed or adopted by a party with present intention to authenticate a writing . . . The official comment elaborates that '[i]t may be on any part of the document and in appropriate cases may be found in a billhead or letterhead . . . ' " (quoting N.Y. U.C.C. § 1–201(39)); *CareandWear*, 581 F. Supp. 3d at 557 (holding two purchase orders written on the buyer's letterhead which both clearly stated the quantity, price, and delivery date of goods satisfied New York Statute of Frauds); *H.Daya Int'l Co. v. Arazi*, 348 F. Supp. 3d 304, 310 (S.D.N.Y. 2018) (holding six invoices with seller's letterhead which included the parties' names and addresses, the payment terms, descriptions of the goods, and the total amount of the sale satisfied New York Statute of Frauds).

Accordingly, the Court finds that Plaintiff has sufficiently alleged that the Purchase Orders attached to the TAC—on the buyer's letterhead and which clearly state the parties' names, addresses, quantity, goods description, price, and payment terms—have satisfied the Statute of Frauds and are valid contracts between Plaintiff and the Rebecca Taylor Defendants.

C. <u>Plaintiff Sufficiently Alleges the Purchase Orders
Are Enforceable Against the Vince Defendants.</u>

The Vince Defendants argue that even if the Purchase Orders are enforceable contracts between Plaintiff and the Rebecca Taylor Defendants, Plaintiff fails to sufficiently allege that the Purchase Orders are enforceable *against the Vince Defendants* because the Purchase Orders are not signed by them, and the Vince Defendants are not identified as the purchaser anywhere on the documents.[4]  Def. Mem. at 8–10.  Plaintiff counters that it has, nonetheless, adequately alleged that the Vince Defendants are parties to the Purchase Orders because the Vince Defendants are the "alter egos" of the Rebecca Taylor Defendants.  Pl. Opp. at 10.

While the general rule is that a breach of contract claim can only be asserted against a party to the contract, the New York Court of Appeals has created an "alter ego" exception whereby the owner of a corporation or a corporate affiliate, under certain limited circumstances, may be held liable for the corporation's obligations.  *See, e.g.*, *TNS Holdings Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339, 680 N.Y.S.2d 891, 893, 703 N.E.2d 749, 751 (N.Y. 1998); *Morris v. N.Y.S. Dep't of Taxation & Fin.*, 82 N.Y.2d 135, 140–41, 623 N.E.2d 1157, 1160, 603 N.Y.S.2d 807, 810 (N.Y. 1993); *accord Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991).  The New York Court of Appeals has made clear that the analysis governing the exception is "[a]kin to piercing the corporate veil to 'prevent fraud or to achieve equity.' " *TNS Holdings*, 92 N.Y.2d at 339.  In order to pierce the corporate veil, a party must establish that "(1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff

---

[4] All fifty-two purchase orders that Plaintiff attaches to the TAC and which Plaintiff alleges have been breached exclusively bear the letterhead "Rebecca Taylor"—not that of any Vince Defendant.  *See* TAC, Exhibit 3, Purchase Orders.  The Terms and Conditions that Plaintiff argues should be considered as one contract with these Purchase Orders expressly state that the "terms and conditions govern purchase orders issued *by Vince*."  *See* Terms and Conditions at 5 (emphasis added).

which resulted in the plaintiff's injury." *JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 306 F. Supp. 2d 482, 485 (S.D.N.Y. 2004); *see also, e.g.*, *TNS Holdings*, 92 N.Y.2d at 339; *Freeman v. Complex Computing Co., Inc.*, 119 F.3d 1044, 1052 (2d Cir. 1997). "Wrongdoing in this context does not necessarily require allegations of actual fraud. While fraud certainly satisfies the wrongdoing requirement, other claims of inequity or malfeasance will also suffice." *Baby Phat Holding Co., LLC v. Kellwood Co.*, 123 A.D.3d 405, 407–08, 997 N.Y.S.2d 67 (1st Dep't 2014) (citing *TNS Holdings*, 92 N.Y.2d at 339).

Here, at this stage, Plaintiff alleges that the Vince Defendants are the "alter egos" of the Rebecca Taylor Defendants sufficiently to withstand a motion to dismiss. Plaintiff alleges that after Vince Holdings Corp. acquired Rebecca Taylor Inc., both of the Rebecca Taylor Defendants—by virtue of Rebecca Taylor Inc.'s sole membership in Rebecca Taylor Retail Stores LLC—became wholly owned subsidiaries of Defendant Vince Holding. TAC ¶ 11. Additionally, Plaintiff asserts that according to Vince Holding's 10-K filings, Rebecca Taylor Inc. is exclusively controlled by both Vince Defendants. TAC ¶ 9. Plaintiff alleges that, as such, based upon the Vince Defendants' sole control of Rebecca Taylor Inc., Rebecca Taylor Retail Stores LLC is similarly exclusively controlled by the Vince Defendants. TAC ¶ 10. Plaintiff further alleges that, at some point, the Vince Defendants and the Rebecca Taylor Defendants merged their invoice system into a single account, requiring the submission of both Rebecca Taylor Invoices and Vince Invoices to a single email address with a "Vince" domain. TAC ¶ 21.

While mere ownership is not sufficient to create alter ego liability, "[a]llegations that corporate funds were purposefully diverted to make it judgment proof or that a corporation was dissolved without making appropriate reserves for contingent liabilities are sufficient to satisfy the pleading requirement of wrongdoing which is necessary to pierce the corporate veil on an alter-ego theory." *Baby Phat Holding*, 123 A.D.3d 405, 407–08 (citing *Grammas v. Lockwood Assoc.*,

LLC, 95 A.D.3d 1073, 944 N.Y.S.2d 623 (2d Dept. 2012)); *see also Citibank, N.A. v. Aralpa Holdings Ltd. P'ship*, No. 1:22-CV-08842 (JLR), 2024 WL 398094, at *18 (S.D.N.Y. Feb. 2, 2024); *Okapi Partners, LLC v. Holtmeier*, No. 18-CV-6381 (PKC), 2019 WL 1517553, at *4 (S.D.N.Y. Apr. 8, 2019).  These are precisely the type of factual allegations contained in the TAC. Plaintiff alleges that after the Vince Defendants acquired exclusive control of the Rebecca Taylor Defendants, the Rebecca Taylor Defendants were treated not as separate entities, but as part of the Vince company brand and global contemporary group.  TAC ¶ 10.  For example, Plaintiff alleges that the Rebecca Taylor Defendants are controlled and managed by the Vince Defendants, and monies and assets of the Rebecca Taylor Defendants have been commingled and intermingled with the Vince Defendants' funds and obligations.  TAC ¶ 13.  In addition, Plaintiff alleges that the Vince Defendants have sold certain assets of the Rebecca Taylor Defendants and used those assets and funds to pay obligations of the Vince Defendants, and have caused the Rebecca Taylor Defendants to guarantee loans to the Vince Defendants.  TAC ¶ 13.  Most notably, Plaintiff alleges that the Vince Defendants "compelled the [Rebecca Taylor] Entities to enter into assignments for the benefit of creditors" to "deliberately render[] the [Rebecca Taylor] Entities financially unable to respond to a money judgement."  TAC ¶ 13.[5]  In ruling on a motion to dismiss, the Court must accept these allegations as true and draw all reasonable inferences in favor of the Plaintiff. *Iqbal*, 556 U.S. at 678.

Accordingly, because Plaintiff sufficiently alleges that the Purchase Orders constitute an enforceable contract between Plaintiff and the Rebecca Taylor Defendants, and Plaintiff also

---

[5] Plaintiff also alleges that the Vince Defendants have (1) chose the law firm to represent the Rebecca Taylor Defendants in this action, (2) paid the legal fees of the Rebecca Taylor Defendants to the chosen law firm for its representation in this action, and (3) controlled the decision making and litigation strategy to be implemented by the chosen law firm, including, but not limited to the decision not to retain new counsel to represent the Rebecca Taylor Defendants.  TAC ¶ 49.

adequately alleges that the Vince Defendants are the "alter egos" of the Rebecca Taylor Defendants, the Vince Defendants' motion to dismiss the breach of contract claim is denied.

## III.    Fraud By Material Omission (Claim Two)

Plaintiff's second cause of action is a claim for "fraud by material omission."[6]  Plaintiff alleges in support that the Vince Defendants did not disclose to Plaintiff that the Rebecca Taylor Defendants were in "financial straits," but rather conducted "business as usual."  TAC ¶¶ 73–82. The Vince Defendants argue that Plaintiff's fraud claim should be dismissed because it fails to satisfy the particularity required by Federal Rule of Civil Procedure 9(b), and in any event, the Vince Defendants were under no duty to disclose such information.  Def. Mem. at 15.

### A.    Rule 9(b) Specificity Requirement

Rule 9(b) sets forth a heightened pleading standard for allegations of fraud.  *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006).  Where, as here, the fraud is based on an omission and "the plaintiff is unable to specify the time and place because no act occurred, the complaint must still allege: (1) what the omissions were; (2) the person responsible for the failure to disclose; (3) the context of the omissions and the manner in which they misled the plaintiff, and (4) what defendant obtained through the fraud."  *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 293 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001). "But despite Rule 9(b)'s insistence on specificity when pleading fraud claims, 'it does not elevate the standard of certainty that a pleading must attain beyond the ordinary level of plausibility.' " *Pilat v. Amedisys, Inc.*, No. 23-566, 2024 WL 177990, at *2 (2d Cir. Jan. 17, 2024) (quoting *United States ex rel. Chorches for Bankr. Est. of Fabula v. American Medical Response, Inc.*, 865 F.3d 71, 88 (2d Cir. 2017)).

---

[6] The parties agree that New York law applies to Plaintiff's fraud by omission claim.

Plaintiff satisfies the heightened pleading standard.  First, Plaintiff identifies what the omissions were, *i.e.*, financial distress—specifically that the Rebecca Taylor Defendants suffered a 28% loss in the second quarter of 2022 thereby requiring Vince to discontinue Rebecca Taylor operations.  *See* TAC ¶¶ 37, 39, 78.  Plaintiff alleges that despite knowing the critical state of the Rebecca Taylor Defendants' financial stability, the Defendants continued to place purchase orders with Plaintiff and conduct business as normal, deliberately withholding from Plaintiff their "critical financial situation."  TAC ¶ 40.  Second, Plaintiff alleges the "person[s] responsible for the failure to disclose"—namely, "representatives of" the Vince Defendants and the Rebecca Taylor Defendants, "including but not limited to Gilman Chow, Lori Stinga (Senior Manager Production), Jane Noble, Heather Hernandez (Product Development) and Christina Tamasi (Assistant Production Manager)."  TAC ¶ 37.  Third, Plaintiff alleges "the context of the omissions," alleging that they occurred when Defendants' representatives failed to disclose the financial distress "in the days, weeks and months before September 12, 2022" during various "discussions with [Plaintiff's] representatives, including but not limited Fred Huang, and Kenny regarding new designs and new manufacturing requirements for Defendants' 2022 Holiday Season line and Spring 2023 line."  TAC ¶ 37.  Plaintiff also alleges "the manner in which [the omissions] misled [Plaintiff]," asserting that Plaintiff "would not have accepted [] purchase orders had it known that [Defendants] would 'wind down' the [Rebecca Taylor] business and refuse to pay [Plaintiff] for the orders."  TAC ¶ 42.  Finally, Plaintiff undisputedly alleges "what defendant[s] obtained through the fraud"—namely, $1,706,042.90 worth of fulfilled purchase orders for which Plaintiff was never paid.  TAC ¶ 43.

### B.  Duty to Disclose

Next, the Vince Defendants argue that even if Plaintiff's allegations with respect to its fraud claim satisfy Rule 9(b), it nevertheless fails to state a claim for fraud against the Vince

Defendants because they were under no duty to disclose information about Rebecca Taylor's financial condition.  Def. Mem. at 15.

A claim of fraud by omission requires that the defendant "had a duty to disclose the concealed fact."  *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 181 (2d Cir. 2007); *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 179, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (N.Y. 2011) ("A cause of action for fraudulent concealment requires . . . an allegation that the defendant had a duty to disclose material information and that it failed to do so.").  New York recognizes a duty to disclose in three situations: "first, where the party has made a partial or ambiguous statement, on the theory that once a party has undertaken to mention a relevant fact to the other party it cannot give only half of the truth; second, when the parties stand in a fiduciary or confidential relationship with each other; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge."  *Harbinger Cap. Partners LLC v. Deere & Co.*, 632 F. App'x 653, 656 (2d Cir. 2015); *see also Lerner*, 459 F.3d at 292.

Plaintiff has not alleged that any Defendant made a "partial or ambiguous statement that requires additional disclosure to avoid misleading the other party."  Instead, their fraud claim is based exclusively on fraudulent *omission—i.e.*, that the Vince Defendants *entirely* omitted to inform it of Rebecca Taylor's financial condition.  TAC ¶¶ 73–82.  Nor does Plaintiff allege a "fiduciary or confidential relationship" with any Defendant.  Despite Plaintiff's emphasis that it maintained a "long-standing trusted relationship" with the Rebecca Taylor Defendants, "absent an allegation of a special relationship, mere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship."  *Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*,

722 F. App'x 12, 15 (2d Cir. 2018).[7]  Finally, Plaintiff's allegation that the nine-year business

relationship between it and the Rebecca Taylor Defendants created a "fiduciary or confidential

relationship" also fails as a matter of law.  *See Galvstar*, 722 F. App'x at 16 (finding no fiduciary

relationship where "[t]he allegations only demonstrate that [defendant] had an arm's length

purchaser supplier relationship with [plaintiff]"); *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130

(2d Cir. 2002) (explaining that "when parties deal at arm's length in a commercial transaction, no

relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise

absent extraordinary circumstances").

Finally, "where one party possesses superior knowledge, not readily available to the other,

and knows that the other is acting on the basis of mistaken knowledge," a party has a duty to

disclose.  *Harbinger*, 632 F. App'x at 656.  "As several district courts have suggested, such a duty

usually arises . . . in the context of business negotiations where parties are entering a contract."

*Lerner*, 459 F.3d at 292 (collecting cases) (citations and quotations omitted).  However, statements

or omissions about a party's intent to perform (or not perform) under a contract are insufficient to

support a fraud claim under New York law.  Specifically, "the intention to breach does not give

rise to a duty to disclose.  Instead, the duty to disclose must exist *separately* from the duty to

perform under the contract." *TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 91 (2d Cir.

2005); *see also Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 196 (2d Cir. 2001)

("[U]nder New York law, where a fraud claim arises out of the same facts as plaintiff's breach of

contract claim, with the addition only of an allegation that defendant never intended to perform

---

[7] Plaintiff also alleges that on one occasion, the Defendants (although Plaintiff does not specify which Defendant) made a statement expressing gratitude for Plaintiff's "partnership with Rebecca Taylor over the past few years."  TAC ¶¶ 71, 94.  But such a comment clearly does not reflect a *legal* partnership between Plaintiff or the Rebecca Taylor Defendants.  Nor does Plaintiff attempt to allege a legal partnership.  *See Kidz Cloz, Inc. v. Officially For Kids, Inc.*, 320 F. Supp. 2d 164, 171 (S.D.N.Y. 2004) (partnership requires, *inter alia*, "the parties' sharing of profits and losses" and "the parties' joint control and management of the business").

the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract.").

In other words, "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder, is insufficient to state an independent tort claim." *Telecom Int'l Am.*, 280 F.3d at 196; *see also Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *Exch. Listing, LLC v. Inspira Techs., Ltd.*, 661 F. Supp. 3d 134, 156 (S.D.N.Y. 2023). Moreover, under New York law, there is no obligation to disclose insolvency of the contracting entity itself, let alone the financial distress of a subsidiary. *Archawski v. Hanioti*, 239 F.2d 806, 812 (2d Cir. 1956) ("Under the law of New York, one who enters into a contract without disclosing a known condition of insolvency does not thereby become chargeable with fraud . . . merely from the fact of his insolvency, and his omission upon a purchase of property upon credit to disclose such condition to his vendor."); *Coface v. Optique Du Monde, Ltd.*, 521 F. Supp. 500, 504 (S.D.N.Y. 1980) ("[A] contractual relationship does not trigger any disclosure obligation, at least as to the fact of insolvency.").

However, that is precisely what Plaintiff alleges here. In support of its fraudulent omission claim, Plaintiff alleges that it "would not have accepted the[] purchase orders, thus creating a contract for those orders, had it known that [Defendants] suffered a 28% loss in the second quarter of 2022 . . . and that Defendants intended to refuse to pay [Plaintiff] for the garments received pursuant to purchase orders issued by Defendants." TAC ¶ 78. As such, this is a quintessential example of a misrepresentation of an intent to perform under a contract, and Plaintiff offers nothing in the way of distinguishing the claim from its breach of contract claim. Accordingly, Plaintiff's fraud by omission claim against the Vince Defendants is dismissed as duplicative of its contract claim. Because Plaintiff's fraud claim is dismissed, the Court grants the Vince Defendants' motion to strike the request for punitive damages that Plaintiff asserts in connection with its claim for

fraud.  TAC ¶ 82; *Greenbaum v. Svesnka Handelsbanken, N.Y.*, 979 F. Supp. 973, 982 (S.D.N.Y.

1997), *on reconsideration sub nom. Greenbaum v. Handelsbanken*, 26 F. Supp. 2d 649 (S.D.N.Y.

1998) ("[U]nder New York law, punitive damages are not a separate cause of action," but

instead are "inextricably linked to the underlying cause of action."); *Rocanova v. Equitable Life*

*Assurance Soc'y of the United States*, 83 N.Y.2d 603, 616–17, 612 N.Y.S.2d 339, 344–45,

634 N.E.2d 940, 944–46 (N.Y. 1994) (providing that "[a] demand for punitive damages is parasitic

and possesses no viability absent its attachment to a substantive cause of action such as

fraud.") (citing cases); *Stryker v. HSBC Sec. (USA)*, No. 16-CV-9424 (JGK), 2021 WL 5403720,

at *1 (S.D.N.Y. Nov. 17, 2021).

## IV.    Negligent Misrepresentation (Claim Three)

Plaintiff's claim for negligent misrepresentation fails for the same reasons as its claim for

fraud by omission.  As a general rule, a claim for negligent misrepresentation is precluded in a

breach of contract action "unless a legal duty independent of the contract itself has been violated."

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382, 389, 516 N.E.2d 190 (1987) ("It is

a well-established principle that a simple breach of contract is not to be considered a tort unless a

legal duty independent of the contract itself has been violated."); *see also Fleet Bank v. Pine Knoll*

*Corp.*, 290 A.D.2d 792, 795, 736 N.Y.S.2d 737 (2002); *Telecom Int'l Am.*, 280 F.3d at 196; *CSX*

*Transp.,* 471 F.3d at 416.  Plaintiff's negligent misrepresentation cause of action is based on the

exact same allegations as its fraud by material omission claim, which—as previously noted—is

based on the same allegations as Plaintiff's breach of contract claim.  *Compare* TAC ¶¶ 83–98

*with* TAC ¶¶ 50–65; 66–82.  As with its fraud by omission claim, with respect to its negligent

misrepresentation claim, Plaintiff similarly fails to allege a "legal duty [] spring[ing] from

circumstances extraneous to, and not constituting elements of, the [Purchase Orders]" upon which

its breach of contract claim is based.  *Clark-Fitzpatrick*, 70 N.Y.2d at 389.  Accordingly, Plaintiff's

negligent misrepresentation claim against the Vince Defendants is dismissed as duplicative of its breach of contract claim.

## V.    Quasi-Contract Claims (Claims Four and Five)

Plaintiff also brings two quasi-contract claims: one for unjust enrichment (Claim Four) and one for quantum meruit (Claim Five).  TAC ¶¶ 99–107.  The Vince Defendants argue that Plaintiff may not plead quasi-contract claims in the alternative alongside a claim that the defendant breached an enforceable contract.

Federal Rule of Civil Procedure 8, however, expressly authorizes pleadings in the alternative.  *See* Fed. R. Civ. P. 8(a)(3), (d)(2).  For this reason, "courts regularly allow plaintiffs to maintain unjust enrichment and quantum meruit claims as pleadings in the alternative at the motion to dismiss stage where 'the validity and scope of the contract is difficult to determine,' 'where the parties dispute[ ] the existence of a contract,' or where the claims arise out of 'agreements or understandings of the parties that were not expressly written in the contract.' " *Keybanc Cap. Markets, Inc. v. Extreme Steel, Inc.*, No. 23-CV-8535 (JSR), __ F. Supp. 3d __, 2024 WL 62457, at *6 (S.D.N.Y. Jan. 5, 2024) (quoting *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017)); *see also Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) ("Counts Two and Three for quantum meruit and unjust enrichment . . . were properly pleaded as such in the alternative to the contractual claim of Count One."); *Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430 (S.D.N.Y. 2020); *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 519 (S.D.N.Y. 2015); *Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 426 (S.D.N.Y. 2012).

The Vince Defendants counter that "[i]t is *Plaintiff's* position on enforceability that matters, not Defendants' [position]," and because *Plaintiff* does not challenge the validity of any contract, it may not plead quasi-contract claims alongside a breach of contract claim.  Def. Mem.

at 23; Def. Reply at 9.  The Vince Defendants appear to be playing a bit fast and loose.  The Vince Defendants are indeed correct that a plaintiff may not *recover* under quasi-contract claims such as unjust enrichment or quantum meruit where an *enforceable* contract governs the same subject matter.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (citing *Clark-Fitzpatrick*, 70 N.Y.2d at 388).  However, the fact that, as the Court has determined *supra*, the TAC pleads a viable breach of contract claim based on the Purchase Orders does not warrant dismissal of Plaintiff's quasi-contract claims at this stage.  In ruling on a motion to dismiss the breach of contract claim, the Court relies on and credits the allegations in the TAC and draws all reasonable inferences in Plaintiff's favor.  *Iqbal*, 556 U.S. at 678.  In other words, the Court did not find that the Purchase Orders constituted an enforceable, valid contract *as a matter of law*.  Rather, the Court merely found that, at the pleadings stage, Plaintiff's allegations suffice to state a claim for breach of contract.  *See supra* Section II.  However, the Vince Defendants have contested the validity of the contract and may develop support for their contention in discovery and ultimately prevail at trial.  Should it develop that there is *not* a contract enforceable against the Vince Defendants, Plaintiff *may* well have a valid quasi-contract or unjust enrichment claim.

Here, the Vince Defendants have already disputed the validity of an existing contract not just as a legal matter (which the Court has resolved against them) but also as a factual matter (which they are free to continue to pursue).  The Vince Defendants may well raise other challenges to the Purchase Orders' enforceability in general—or as against *them* as alter egos—as the case progresses.  The Court therefore finds that Plaintiff should be allowed to proceed with these alternative claims, at least at this stage of the case.  To hold otherwise would violate the liberal policy of Rule 8(e)(2) which allows plaintiffs wide "latitude" in framing their right to recover.  *See MacFarlane v. Grasso*, 696 F.2d 217, 224 (2d Cir. 1982).

Finally, the Vince Defendants briefly argue that Plaintiff's quasi-contract claims fail in any event because Plaintiff has made no particular allegations against *them* specifically—namely, "Plaintiff alleges that defendants 'benefitted at the Plaintiff's expense' without specifying any benefit received by the Vince Defendants." Def. Mem. at 24. This argument is directly belied by Plaintiff's explicit allegations that it delivered garments "*to the Vince Defendants* and Rebecca Taylor Defendants" in conformity with the terms of the purchase orders and issued debt notices, totaling $1,706,042.90. TAC ¶ 33 (emphasis added); *see also* TAC ¶ 32 ("For the purchase orders received, accepted and fulfilled by [Plaintiff] from *Vince* and Rebecca Taylor . . . [Plaintiff] issued debit notices totaling $1,706,042.90.") (emphasis added). In light of these allegations, accepted as true on this motion, Plaintiff adequately alleges that the Vince Defendants received a benefit. Notably, nowhere in their motion papers do the Vince Defendants ever dispute that these goods were delivered as alleged. Accordingly, the motion to dismiss Plaintiff's claims for unjust enrichment and quantum merit is denied.

## VI.    Further Leave to Amend

Rule 15(a)(2) directs a court to grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, the Court has discretion to deny a motion to amend where "there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002). Plaintiff already has amended its complaint *three* times, including twice after the Vince Defendants moved to dismiss on similar, if not identical, grounds argued in the current motion to dismiss. Allowing Plaintiff to file a *fifth* complaint—*i.e.*, a *fourth* bite at the apple—to rectify any aforementioned deficiencies would unduly prejudice the Vince Defendants which have now spent the time, costs, and resources to seek dismissal of Plaintiff's various complaints four separate times. As such, the Court declines to grant Plaintiff leave to amend further any dismissed claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The parties' requests for oral argument are also DENIED.[8] The Clerk of the Court is respectfully requested to terminate docket entries 82, 87, and 90.

**SO ORDERED.**

**Date: September 11, 2024**
**New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[8] *See, e.g., Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 12-CV-6283 (VSB), 2016 WL 11944285, at *1 (S.D.N.Y. Sept. 30, 2016) (denying motions for oral argument where the court "does not believe that oral argument would be beneficial to my determination of either set of motions").